UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| AVIATION WEST CHARTERS, LLC d/b/a ANGEL MEDFLIGHT,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>Defendant. | CIV. NO. 2:16-436 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE |

----oo0oo----

Plaintiff Dina Miller ("Miller") brings this action against defendant UnitedHealthcare Insurance Company ("United") alleging that defendant violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a), when it failed to pay Aviation West Charters, LLC ("Aviation West") for ambulatory services provided to M.M., Miller's minor child. Before the court is defendant's Motion for summary judgment and Motion to strike Miller's declaration.

1

I.  Factual and Procedural Background

M.M. is covered by an employer-sponsored health benefit plan sponsored by McClone Construction Company ("the Plan"), for which United is the insurer and claims administrator. (See Stalinski Decl., Ex. A, the Plan (Docket No. 24-1).) The Plan offers emergency and non-emergency ambulatory services.

While on vacation in La Paz, Mexico, M.M. broke her right leg and was subsequently taken to a Mexican hospital. From the hospital, M.M.'s family called and spoke with M.M.'s primary care physician as well as an orthopedic surgeon in Seattle, Washington, and arranged for M.M. to be transported back to Seattle. (PX032.) On Friday, January 10, 2014, Aviation West, an air ambulance service, requested pre-authorization from defendant for air and ground ambulance service to transport M.M. from Mexico to Seattle Children's Hospital. (Stalinski Decl., Ex. B at 1 (Docket No. 24-1).) A United representative told Aviation West that somebody would contact them soon to request documents. (PX033.) Aviation West later called back and was told that the United system showed that the request had not been categorized as urgent, and that the flight could occur at any time between January 10 and August 10, 2014. (Id.) Aviation West explained the urgency of the request and stated that the flight needed to leave that day. (Id.) The United representative stated that she would put the request "on a rush" and that a case manager would review the request that day. (Id.) Aviation West later called back once more and was again told that the request had not been submitted as urgent. (Id.) Aviation West again explained that the request was urgent and that the

2

flight needed to leave that day. In response, the United representative explained that a case manager had been assigned and would contact Aviation West to request records. (Id.) The representative then stated that United closed at 6 p.m., and explained that "[i]f it's that severe and the patient needs to go to an emergency room, then it's best that you take [her] to the emergency room." (PX043.)

On January 11, 2014, after still not hearing from a United case manager, Aviation West flew M.M. from Mexico to Seattle, at a cost of $495,925. (Stalinski Decl., Ex. D at 203 (Docket No. 24-2).) Upon arrival at Seattle Children's Hospital, M.M. was immediately taken to the emergency department. (PX032.) M.M.'s family "wished to proceed with the planned intramedullary fixation," and M.M. immediately received this treatment. (Id.)

Aviation West submitted a reimbursement claim for emergency transportation, which United denied.[1] (Stalinski Decl., Ex. C at 1-2 (Docket No. 24-1).) Aviation West brought three internal appeals from the denial of this claim as M.M.'s authorized representative, which United denied. (See PX15; PX16; PX21.) Aviation West then filed a request for external review, which United also denied. (See PX41.) On March 1, 2016, Aviation West initiated a lawsuit against United, seeking to recover benefits due under the Plan and ERISA as M.M.'s purported assignee. (See First Am. Compl. (Docket No. 13).)

United moved for summary judgment on the basis that

---

[1] United first issued a partial payment of $11,677.03 but then reversed itself and sought to recoup the amount. (PX009.)

3

Aviation West lacked standing to bring the action. (See Def.'s July 24 Mot. for Summ. J. (Docket No. 23).) Miller subsequently filed a motion to intervene as plaintiff. On August 24, 2017, the court granted United's motion for summary judgment along with Miller's motion to intervene. (Docket Nos. 46, 47.) As the new plaintiff, Miller is seeking recovery of benefits under 29 U.S.C. § 1132(a)(1)(B), as well as prejudgment interest and reasonable attorneys' fees under 29 U.S.C. § 1132(a)(3) and § 1132(g)(1).

II. Standard of Review

The court must first address the argument regarding what standard of review to apply to the administrator's denial of Aviation West's claim for benefits. When an ERISA plan grants discretion to the administrator to interpret the terms of the plan and determine benefits eligibility, the administrator's denial of benefits is subject to abuse of discretion review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Abatie v. Alta Health & Life Ins., 458 F.3d 955, 962-64 (9th Cir. 2006). Here, it is undisputed that the Plan explicitly stated that United had discretion to "[i]nterpret Benefits under the Policy," "[i]nterpret the other terms, conditions, limitations and exclusions set out in the Policy," and "[m]ake factual determinations related to the Policy and its Benefits." (Stalinski Decl., Ex. A at 44.)

Plaintiff contends that the application of California Insurance Code § 10110.6 voids provisions that purport to grant discretion to insurance companies.[2] According to plaintiff, the

---

[2] California Insurance Code § 10110.6 states, in relevant part, "(a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in

4

1  discretionary clause in the Plan is therefore void, and thus
2  abuse of discretion review is inapplicable and de novo review
3  should be applied instead.  However, the Plan contains a choice
4  of law provision explaining that Virginia law will apply to any
5  disputes involving the terms of the Plan.  (Stalinski Decl., Ex.
6  A at 40.)  Thus California Insurance Code § 10110.6 is
7  inapplicable.

8       Plaintiff also argues that de novo review should apply
9  because defendant engaged in a flagrant procedural violation of
10 ERISA that "shifts the standard of review from abuse of
11 discretion to de novo."  See Abatie, 458 F.3d at 972.
12 Specifically, plaintiff points to United's failure to grant
13 Aviation West's request for an independent external review and
14 its determination that the claim denial did not involve medical
15 judgment.  Assuming these to be violations, they are not of the
16 type so egregious as to shift the standard of review from abuse
17 of discretion to de novo.  Under Abatie, the administrator must
18 have "failed to comply with virtually every applicable mandate of
19 ERISA."  Id. at 971.  The court does not find that here.

20 III. Motion to Strike

21      Miller's declaration was not part of the administrative
22 record.  In reviewing a denial of ERISA benefits under the abuse

---

California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable." Cal. Ins. Code § 10110.6.

5

of discretion standard, the court is limited to the evidence that was reviewed by the administrator at the time the denial decision was made. See Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1471 (9th Cir. 1993) (abrogated on another ground by Abatie, 458 F.3d 955) ("Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it."); Abatie, 458 F.3d at 971 ("review is limited to the record before the plan administrator.") In fact, plaintiff's attorneys themselves previously objected to certain interrogatories, arguing that "[i]n an ERISA action for unpaid benefits, a court's review is generally limited to the administrative record." (Westerfeld Decl., Ex. A, Pl.'s Resp. to Interrog. (Docket No. 35-1).)

While the court may, in its discretion, consider evidence beyond the administrative record to determine the nature of a conflict of interest, the decision on the merits "must rest on the administrative record once the conflict (if any) has been established." (Id.) However, if there is a conflict of interest, the review of the administrative record may be "informed by the nature, extent, and effect on the decision-making process" of the conflict. Abatie, 458 F.3d at 967.

Here, the defendant acted as both the claims administrator and the funding source for benefits, and therefore there was a clear conflict of interest. (Def.'s July 24 Mot. for Summ. J. at 10.) Accordingly, the court is permitted to look to evidence outside of the administrative record to determine the

nature of this conflict, but the court cannot look at any evidence outside of the record in order to reach its decision regarding whether the administrator abused its discretion in denying Aviation West's claim.[3] Accordingly, to the extent plaintiff attempts to use her declaration as evidence that defendant's decision qualified as an abuse of discretion or was otherwise incorrect, it is inadmissible.

IV. Motion for Summary Judgment

If required to make a final determination on the basis of the record presently before it, the court would be in a difficult position. Under the Plan, if United found the air ambulance service to be for an emergency, it was obligated to pay the cost of transportation "to the nearest Hospital where Emergency Health Services could be performed." (Stalinski Decl., Ex. A at 47.) As the court reads the Plan, there is no provision authorizing United to scrutinize the reasonableness of the bill submitted or to pay anything less than the full amount of the bill. Thus, if the court concludes United abused its discretion by failing to find the transportation was an emergency, it would have no choice but to order United to pay the full amount of the bill. Bluntly stated, in the opinion of the court, charging $495,925 for a flight from La Paz, Mexico to Seattle, Washington under the circumstances amounted to highway robbery.[4]

---

[3] Because defendant admits the conflict and explains that it acted as both the claims administrator and the funding source for benefits, (Def.'s Mot. for Summ. J. at 10), the court finds that it need not look outside of the administrative record to understand the nature of the conflict.

[4] Admittedly, some of this amount was for the medical services aboard the aircraft, but at oral argument counsel for

On the other hand, if the court concludes United did not abuse its discretion, it runs the risk of saddling Miller with such an exorbitant bill. Miller does not allege that she has paid this bill or that she is liable to pay it, and counsel at oral argument could shed no light on this question. The court cannot imagine how anyone, except under extreme duress, would agree to pay such a sum. However, it does appear that Aviation West may seek to recover it from Miller, and in the opinion of the court such result would be unconscionable.

In reviewing United's denial letter, it appears to the court that United may have had some of the same concerns. United stated that coverage was not approved because "[e]mergent transportation for a serious medical condition or symptom resulting from an injury is to the nearest facility. In the case of non-emergent transportation, the pre-service request was received however did not allow for UHC initiation and direction for non-emergent air ambulance transportation." (Stalinski Decl., Ex. C at 201.) From this statement of the reasons for denial, it could reasonably be inferred that United did not deem the issue to be whether there was an emergency, but rather whether the transportation was to the nearest facility. Alternatively, United appears to be stating that if it was not an emergency, Aviation West did not follow the proper procedures for obtaining pre-authorization, as required by the Plan. (Stalinski Decl., Ex. A at 13, 17.)

United's stated concern that the transportation was not

---

Aviation West acknowledged that only amounted to a little more than 10 percent. The rest was for use of the aircraft.

to the nearest facility may well have been motivated by the excessiveness of the amount claimed and a feeling that transportation to a closer facility may have been cheaper. Unfortunately, however, as the court reads the plan, there is no provision for United to pay only the amount it would have cost to transport M.M. to any closer facility. Indeed, to this day, United has not suggested what that would have cost. United was faced with the uncomfortable choice of either paying the exorbitant amount presented in the bill or paying nothing at all. Under the circumstances, it appears that United opted to pay nothing.

From United's statement in its denial letter, the court can certainly see why plaintiff also would not have understood that the issue was whether or not there was an emergency. Had plaintiff and Aviation West fully understood that, plaintiff now alleges, there were other facts they would have presented to United which would have been part of the record. Specifically, in plaintiff's declaration, which has been stricken in this proceeding, she states that after arriving at the hospital in La Paz, she contacted doctors in M.M.'s primary-care group in Seattle and was put in touch with specialists at Seattle Children's Hospital. (PX042 ¶ 11.) Plaintiff informed those specialists that the Mexican doctors planned to perform a procedure that involved placing M.M.'s leg in traction and drilling holes into it. (Id. ¶ 12.) The Seattle specialists disagreed with this proposed plan and informed plaintiff that M.M. required, as soon as possible, a procedure called flexible intramedullary nail fixation. (Id. ¶ 13.) The Mexican hospital

lacked the medical technology and equipment needed to perform this recommended procedure. (Id. ¶ 14.) Seattle Children's Hospital agreed to admit M.M. and perform this surgery.

Although this evidence is outside of the record and cannot be considered by the court here, it is information that, had United asked about or received during the administrative process, would have likely impacted its decision regarding whether or not M.M. required emergency services.

The plan administrator has a duty to engage in a meaningful dialogue with the claimant about her claim. See Booton v. Lockheed Med. Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat [29 C.F.R. § 2560.503-1(g)] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.... [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."). "If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial." (Id.) The Ninth Circuit has further explained that "[b]y requiring that an administrator notify a claimant of the reasons for the administrator's decisions, the [ERISA] statute suggests that the specific reasons provided must be reviewed at the administrative level." Abatie, 458 F.3d at 974.

The court has the authority to remand a claim to the plan administrator if the specific reasoning was not reviewed at the administrative level and the record is not sufficiently developed. See Mongeluzo v. Baxter Travenol Long Term Disability

Ben. Plan, 46 F.3d 938, 944 (9th Cir. 1995). Here, the court believes that if the plan administrator had the opportunity to consider the information in plaintiff's declaration, it is likely that United may have come to a different conclusion on whether the air transportation was for an emergency.

As the Ninth Circuit has explained, "an ERISA plan cannot rely on a lack of information to support its denial of benefits when it fails to inform the beneficiary about the missing information so that the beneficiary can provide it." Booton, 110 F.3d at 1464. As between the parties, it is the insurance company, familiar with the terms of its Plan and the applicable ERISA laws, which is in a better position to know what information it needs in order to make a reasoned decision. Moreover, United was on notice that the doctors in Seattle had communicated with plaintiff prior to M.M.'s transport because the medical records, which United did have access to throughout the administrative process, indicated that the doctor in Seattle had previous conversations with M.M.'s parents. (See PX032 (explaining that M.M.'s family "wished to proceed with the planned intramedullary fixation," indicating that prior conversations had occurred regarding treatment).)

A reasonable administrator in that situation should have appreciated that the doctors in Seattle would have information regarding whether or not an emergency existed, and would have contacted those doctors, or at the very least invited the claimant to supply that information. Because the plan administrator did not, the court will remand this matter to the administrator to give United a fair opportunity to consider the

information that would have been developed had United followed through and sought it out in the first instance.

The court expresses no opinion as to what additional information shall be received or how the plan administrator should decide any issue on remand, except to note that nothing in this Order should be construed to prevent the parties from negotiating a compromise of this claim if it should be deemed within the plan administrator's authority to do so.

IT IS THEREFORE ORDERED that defendant's Motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's Motion to strike be, and the same hereby is, GRANTED.

This action is hereby REMANDED to the plan administrator for further proceedings consistent with this Order.

Dated: November 15, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE